FILED

2017 Jan-27  PM 04:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **BRYAN ALLEN CREEKMORE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.  1:14-CV-8018-SLB** |
| | ) | **Crim. Case No. 1:12-CR-0291-SLB-TMP** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on petitioner Bryan Allen Creekmore's

Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody, as amended [hereinafter Motion to Vacate].  (Doc. 1; Crim. Doc. 20; Doc.

11.)[1]  Citing *Mathis v. United States*, 136 S. Ct. 2243 (2016), *Johnson v. United States*, 135

S. Ct. 2551 (2015), *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *United States*

*v. Howard*, 742 F.3d 1334 (11th Cir. 2014), Creekmore contends he was improperly

sentenced under the Armed Career Criminal Act [ACCA], 18 U.S.C. § 924(e), because his

prior convictions do not qualify as violent felonies.  (*See* doc. 1 at 4, doc. 11 at 1-2, doc. 18

at 1.)  For the reasons set forth below, the court finds that Creekmore's Motion to Vacate is

due to be granted in part and denied in part.

---

[1]Citations to documents in the court's record in petitioner's Motion to Vacate appear
as "(Doc. __)."  Citations to documents in the court's record in the criminal proceedings
against petitioner, Case No. 1:12-CR-0291-SLB-TMP, appear as "(Crim. Doc. __)."  Page
number citations refer to the page numbers assigned to the document by the court's CM/ECF
electronic filing system.

# I. <u>STANDARD OF REVIEW</u>

Pursuant to § 2255 –

> A prisoner in custody under sentence of a [district] court . . . claiming the right
> to be released upon the ground that the sentence was imposed in violation of
> the Constitution or laws of the United States . . . may move the court which
> imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised [on] direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004)(quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir.1988)(quoting *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep.1981)))(internal quotations omitted).  Creekmore has the burden of showing he is entitled to relief from his sentence. *Barnes v. United States*, 579 F.2d 364, 366 (5th Cir. 1978)(citing *Coon v. United States*, 441 F.2d 279 (5th Cir.), *cert. denied*, 404 U.S. 860 (1971)).[2]  He must prove "not merely that the errors [in the proceeding] created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting [the entire proceeding] with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

## II.  BACKGROUND

On June 27, 2012, the Government filed a one count Indictment against Bryan Allen

Creekmore.  (Crim. Doc. 1.)  The Indictment charged Creekmore with possession of a

firearm in violation of 18 U.S.C. § 922(g)(1);[3] it stated:

> The Grand Jury charges that:
>
> On or about the 8th day of November, 2010, in Talladega County, within the Northern District of Alabama, the defendant,
>
> ### BRYAN ALLEN CREEKMORE,
>
> after having been convicted on May 23, 2002, in the Circuit Court of Franklin County, Arkansas, of the offense of Commercial Burglary (Count 1) and Theft of Property (Count 2), in case number CR 2002-44; and having been convicted on October 16, 2007, in the Circuit Court of Leon County, Florida, of the offense of Burglary of a Dwelling (Count 1) and Grand Theft of a Motor Vehicle (Count 2) in case number 2003-CF-02241A, each of the said offenses being a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting commerce a firearm, that is, a Tanfoglio .22 caliber pistol, in violation of Title 18, United States Code, Section 922(g)(1).

(*Id.*)  Creekmore entered a plea of guilty to the charge.  (Crim. Doc., *Minute Entry* [Sept. 18,

2012].)

The Probation Office prepared a Presentence Investigation Report [the Report] for the

court's use in sentencing.  As part of the "Defendant's Criminal History," the Report listed

---

[3]Section 922(g) prohibits, *inter alia*, a person convicted of a felony from "possess[ing] in or affecting commerce . . . any firearm or ammunition . . . or receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).

3

four prior convictions as "predicate violent felon[ies] for application of the enhanced penalties at 18 U.S.C. § 924(e)(1) and USSG § 4B1.4:"[4]

    1.  "Burglary/Pickens County Superior Court; Jasper, GA; Case No.: 2001SUCR450" (November 14, 2001);

    2.  "Burglary – Commercial . . . Franklin County Circuit Court; Ozark, AR; Case No.: CR 2002-44" (February 27, 2002);

    3.  "Attempted Home Invasion Robbery/Leon County Circuit Court; Tallahassee, FL; Case No.: 2003CF002233A" (June 30, 2003); and

    4.  "Burglary of Dwelling . . . Leon County Circuit Court; Tallahassee, FL; Case No.: 2003CF002241A" (June 30, 2003).

(Crim. Doc. 16 at 6-8, 11-14.)  Prior to sentencing, Creekmore objected to the use of the burglary convictions from Georgia and Arkansas to enhance his sentence under the ACCA. (Crim. Doc. 13.)  These objections were overruled.

    On April 18, 2013, the court entered its Judgment in a Criminal Case, which imposed a custodial sentence of 180 months (15 years) in accordance with § 924(e)(1).  (Crim. Doc. 18 at 2.)  Creekmore did not appeal his conviction and/or sentence.[5]

    Creekmore filed his Motion to Vacate, in which he challenges the use of his prior Georgia and Arkansas burglary convictions as ACCA violent felonies:

    The district court [erroneously] found that Mr. Creekmore had valid predicates for the ACCA.

---

    [4]Creekmore has not challenged the use of his prior convictions to enhance his sentence under the Sentencing Guidelines.

    [5]Creekmore pleaded guilty without a plea agreement that limited his right to appeal.

. . .

The district court counted Mr. Creekmore's state of Arkansas conviction for commercial burglary, Arkansas Criminal Code § 3-39-201(b)(1), his state of Georgia conviction for burglary, GA Code 5 16-7-1, and his Florida conviction for second-degree burglary, FL Code 5. 810.02(3)(b), as valid predicates under the Armed Career Criminal Act (ACCA), 18 U.S C. § 924(e) and imposed a sentence of 180 months, which was within a guidelines range enhanced by the ACCA.  In light of Descamps v. United States, ___ U.S. ___, 133 S Ct. 2276 (2013), and United States v. Howard, 742 F.3d 1334 (11th Cir. 2014), Mr. Creekmore's Arkansas and Georgia burglary convictions are not a valid predicates under the ACCA because the statutes are nongeneric and indivisible. Under Descamps, the modified categorial approach cannot be applied, and these convictions cannot qualify as ACCA predicates regardless of what any Shepard documents[6] may show.  Without inclusion of the these burglary convictions, Mr. Creekmore would not have been subject to an enhanced guidelines range under the ACCA.

(Doc. 1 at 4 [footnote added].)  He subsequently amended his Motion to Vacate to add a claim that, after *Johnson*, his Florida convictions for attempted home-invasion robbery and burglary could no longer be considered violent felonies under the ACCA.  (Doc. 11 at 1-2, 8-9, and n.5.)

## III. <u>DISCUSSION</u>

The ACCA states:

(e)(1)  In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony . . . committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

---

[6]*Shepard v. United States*, 544 U.S. 13 (2005).  *Shepard* documents are "a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) [from which a court may] determine what crime, with what elements, a defendant was convicted of." *United States v. Gundy*, 842 F.3d 1156, 1162 (11th Cir. 2016)(quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)(citing *Shepard*, 544 U.S. at 26)).

(2)  As used in this subsection –

. . .

(B)   the term "violent felony" means any crime punishable by
imprisonment for a term exceeding one year . . . that –

(i)  has as an element the use, attempted use, or threatened use
of physical force against the person of another; or

(ii)  is burglary, arson, or extortion, involves use of explosives,
or otherwise involves conduct that presents a serious potential
risk of physical injury to another . . . .

18 U.S.C. § 924(e).  "The first prong of [the] definition [of a 'violent felony' under the

ACCA] is sometimes referred to as the 'elements clause,' while the second prong contains

the 'enumerated crimes' and, finally, what is commonly called the 'residual clause.'" *United*

*States v. Gundy*, 842 F.3d 1156, 1160-61 (11th Cir. 2016)(citing *United States v. Owens*, 672

F.3d 966, 968 (11th Cir. 2012))(footnote omitted).  The Supreme Court declared the residual

clause to be unconstitutionally vague in *Johnson v. United States*, 576 U.S. ——, 135 S. Ct.

2551, 2557-58, 2563 (2015).  However, it held that its "decision [did] not call into question

application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's

definition of a violent felony." *Id*., 135 S. Ct. at 2563.  Therefore, the issue before this court

is whether Creekmore's prior convictions are convictions for violent felonies, as defined by

the elements clause or the enumerated-crimes clause.

Based on the Report, this court found that Creekmore had four qualifying, state-court

convictions for purposes of enhancing his sentence under the ACCA:  three burglary

convictions – violent felonies under the enumerated-crimes clause – and one conviction for attempted home-invasion robbery – a violent felony under the elements clause.

## A.  ENUMERATED CRIMES CLAUSE

### 1.  "Principles and Tools"

Recently, the Eleventh Circuit set forth the following "principles and tools" for determining whether a prior conviction is a violent felony conviction under the enumerated-crimes clause of the ACCA.  *Gundy*, 842 F.3d at 1161-64.

#### a.  Elements vs. Facts

The law is well settled "that '[a]ll that counts under the [ACCA] . . . are the elements of the statute of conviction.'"  *Id*. at 1161 (quoting *Mathis*, 136 S. Ct. at 2251).  "For more than 25 years, [the Supreme Court has] repeatedly made clear that application of ACCA involves, and involves only, comparing elements."  *Id*. (quoting *Mathis*, 136 S. Ct. at 2257).  "'That simple point became a mantra' in the Supreme Court's subsequent ACCA decisions. [*Mathis*, 136 S. Ct. at 2251.]  Indeed, the Supreme Court in *Mathis* pointed out that this 'essential rule' has governed all of its ACCA decisions since *Taylor* [*v. United States*, 495 U.S. 575 (1990)]."  *Id*. (quoting *Mathis*, 136 S. Ct. at 2251-52).

#### b.  Divisible or Indivisible

Relying on *Mathis*, the Eleventh Circuit held:

> *Mathis* also instructs that "[t]he comparison of elements . . . is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." [*Mathis*, 136 S. Ct.] at 2248.  In such cases, the court simply "lines up that crime's elements alongside those of the

generic offense and sees if they match." Id.  This is known as the "categorical approach."  See id. at 2248.

Mathis notes, however, that some criminal statutes do not set out a single crime but "have a more complicated (sometimes called 'divisible') structure."  Id.  In fact, "[a] single statute may list elements in the alternative, and thereby define multiple crimes."  Id. at 2249.  If the statute sets out multiple crimes, it is "divisible."  See id.  Faced with a "divisible" statute, courts must identify which crime in the statute formed the basis of the defendant's conviction.  See id.  The Mathis Court stressed that "[t]o address that need, this Court approved the 'modified categorical approach' for use with statutes having multiple alternative elements."  Id.  Under the modified categorical approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  Id.  Courts must then compare the elements of that identified crime to the elements of the relevant generic offense.  See id.

Gundy, 842 F.3d at 1161-62.

A statute that uses the disjunctive conjunction "or" may "signal" alternative elements, creating distinct crimes,  or  alternative means of committing a single crime.  Id. at 1162.

In Mathis, the Supreme Court . . . instructed that "[t]he first task for a sentencing court faced with an alternatively phrased statute is . . . to determine whether its listed items are elements or means."  Mathis, 579 U.S. at ——, 136 S. Ct. at 2256.  This determination – "elements or means?" – is a "threshold inquiry." Id.  Thus, in an enumerated crimes ACCA case involving a statute with disjunctive or alternative phrasing, courts must first determine (1) whether that statutory alternative phrasing lists multiple alternative elements, thereby creating multiple offenses in a divisible statutory structure, or (2) whether that statutory alternative phrasing merely lists various factual means of satisfying one or more of the statute's otherwise indivisible set of elements.

. . .

More significantly though, the Supreme Court in Mathis added to its ACCA precedent by instructing courts how to discern "elements" from

8

> "means." "Elements are the constituent parts of a crime's legal definition – the things the prosecution must prove to sustain a conviction." *Id*. at 2248 (quotation marks omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id*. at 2248. Facts and means, on the other hand, "are mere real-world things – extraneous to the crime's legal requirements." *Id*. "They are circumstances or events having no legal effect or consequence . . . [and] need neither be found by a jury nor admitted by a defendant." *Id*. (quotation marks and alterations omitted).

*Gundy*, 842 F.3d at 1162-63.

In *Gundy*, the Eleventh Circuit set forth three "tools" that "courts may use to determine whether a statute's 'listed items are elements or means' or, put another way, whether a statute is 'divisible.'" *Id*. (quoting *Mathis*, 136 S. Ct. at 2256). These tools are:

1. "[T]he statute on its face may resolve the issue." [Mathis, 136 S. Ct. 2256.] For example, "[i]f statutory alternatives carry different punishments, then under Apprendi [v. New Jersey, 530 U.S. 466 (2000),] they must be elements." [Mathis, 136 S. Ct. 2256.] "Conversely, if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." Id. (citing United States v. Howard, 742 F.3d 1334, 1348 (11th Cir. 2014)). Additionally, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." Id.

2. [F]ederal sentencing courts can look to state court decisions interpreting an alternatively phrased statute for guidance. Id. If a precedential state court decision makes clear that a statute's alternative phrasing simply lists "alternative methods of committing one offense," such that "a jury need not agree" on which alternative method the defendant committed in order to sustain a conviction, then the statute is not divisible. Id. (quotation marks and alterations omitted). "Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list." Id.

9

3.     As a third tool, the Supreme Court stated that "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." Id. The Supreme Court explained that this "peek" at the record documents "is for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 2256-57 (quotation marks and alterations omitted). This is a "peek" to answer the threshold means-or-elements question (i.e. the divisibility issue) and is not the full-blown modified categorical approach.

*Gundy*, 842 F.3d at 1163.

### c. Generic Burglary

To satisfy the definition of violent felony under the enumerated-crimes clause, a state conviction for one of the enumerated crimes – burglary, arson, extortion, or a crime involving the use of explosives – the elements of the state crime of conviction must be the same or narrower than the generic crime. A generic burglary "contains at least the following elements:  an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. "To determine whether a past conviction is for [burglary under the enumerated-crimes clause], courts use what has become known as the 'categorical approach':  They compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime – *i.e.,* the offense as commonly understood." *Descamps*, 133 S. Ct. at 2281. However, if the statute of conviction is divisible and "one alternative . . . matches an element in the generic offense, but the other . . . does not, the modified categorical approach permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to

10

determine which alternative formed the basis of the defendant's prior conviction." *Id*.  By

determining the statutory alternative under which the defendant was convicted, "[t]he court

can then do what the categorical approach demands:  compare the elements of the crime of

conviction (including the alternative element used in the case) with the elements of the

generic crime." *Id*.

"Because [the court] examine[s] what the state conviction necessarily involved, not

the facts underlying the case, [it] must presume that the conviction 'rested upon [nothing]

more than the least of th[e] acts' criminalized, and then determine whether even those acts

are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678,

1684 (2013)(quoting *Curtis Johnson v. United States,* 559 U.S. 133, 137 (2010)).  However,

"[the] focus on the minimum conduct criminalized by the state statute is not an invitation to

apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a

theoretical possibility, that the State would apply its statute to conduct that falls outside the

generic definition of a crime.'" *Id*. at 1684-85 (quoting *Gonzales v. Duenas-Alvarez,* 549

U.S. 183, 193 (2007)).

With these general principles and tools in mind, the court turns to Creekmore's prior

convictions for burglary under Georgia, Arkansas, and Florida law.

## 2.  GEORGIA BURGLARY CONVICTION – Ga. Code § 16-7-1

In 2001, Creekmore was convicted of burglary in violation of Ga. Code § 16-7-1,

which, at that time, stated:

> A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof.  . . .

Ga. Code § 16-7-1(a)(2011).[7]

In *Gundy*, the Eleventh Circuit has held the Georgia burglary statute is divisible for

the following reasons:

> In contrast to Iowa's statute in *Mathis* and the Alabama statute in *Howard*, the text of the Georgia burglary statute in § 16-7-1, that creates the crime, does not use a single locational element (like "occupied structure" or "building").  The Georgia law also does not contain a definition elsewhere that provides a non-exhaustive laundry list of other places or locations.  The Georgia statute also does not use the term "includes."

> Rather, the Georgia burglary statute, that creates the crime of burglary, uses alternative locational <u>elements</u>.  Section 16-7-1 provides that "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within":

> the dwelling house of another or

> any building, vehicle, railroad car, watercraft, or other such structure <u>designed for use as the dwelling of another</u> or

> within any other building, railroad car, aircraft, or any room or any part thereof.

Ga. Code Ann. § 16-7-1(a) (2011)(emphasis added).  Rather than a single locational element, the plain text of the Georgia statute has three subsets of

---

[7]"Georgia's burglary statute was amended on July 1, 2012, and had not been amended prior to that since 1980.  See 2012 Ga. Laws 899; 1980 Ga. Laws 770.  Accordingly, the 2011 version of Ga. Code Ann. § 16-7-1 was the statute under which [Creekmore] was previously convicted."  *Gundy*, 842 F.3d at 1164 n.3.

different locational elements, stated in the alternative and in the disjunctive. Each of the three subsets enumerates a finite list of specific structures in which the unlawful entry must occur to constitute the crime of burglary. In doing so, the burglary statute has multiple locational elements effectively creating several different crimes. *See Descamps*, 570 U.S. at ___, 133 S. Ct. at 2281 (explaining that an example of a divisible statute is one "stating that burglary involves entry into a building or an automobile").

This is why under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled. For example, the Georgia Court of Appeals has held that a burglary indictment must charge the particular place or premises burgled and the specific location of that place or premises. *See Morris v. State*, 166 Ga. App. 137, 303 S.E.2d 492, 494 (1983) (stating that "where the defendant is charged with burglary, the indictment must specify the location of the burglary" and concluding that the indictment was sufficient where it charged a "building," identified as "the Financial Aid Office and Alumni Office, located at Fort Valley State College, Fort Valley, Peach County, Georgia"); *State v. Ramos*, 145 Ga. App. 301, 243 S.E.2d 693, 693 (1978) (stating it is not necessary to prove "the specific place" to obtain a theft-by-taking conviction, but it is necessary to prove the "specific location" to obtain a burglary conviction); *State v. Green*, 135 Ga. App. 622, 218 S.E.2d 456, 457 (1975); *Chester v. State*, 110 Ga. App. 733, 140 S.E.2d 52, 53 (1964) ("It must be alleged and proved in an indictment for burglary that there was a breaking and entering of one of the classes of buildings set out in the statute."); *Kidd v. State*, 39 Ga. App. 30, 146 S.E. 35, 35 (1928) (holding that the indictment was sufficient where it identified the location burgled as the protected structure of "railroad cars").

The U.S. Supreme Court has told us that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives." *Descamps*, 570 U.S. at ___, 133 S. Ct. at 2290. That the Georgia prosecutor must select and identify the locational element of the place burgled – whether the place burgled was a dwelling, building, railroad car, vehicle, or watercraft – is the hallmark of a divisible statute. Indeed, in every case cited by Gundy and the government, the indictment specified the type of place or premises burgled. *See*, *e.g.*, *Weeks v. State*, 274 Ga. App. 122, 616 S.E.2d 852 (2005)(a "dwelling house"); *Davis v. State*, 308 Ga. App. 7, 706 S.E.2d 710, 714 (2011) (a "dwelling house"); *Smarr v. State*, 317 Ga. App. 584, 732 S.E.2d 110, 114-15 (2012) (a "building" that served as a gas station); *Morris*, 303 S.E.2d at 494 (a "building" used as a "Financial Aid Office and Alumni Office").

13

That the prosecutor must select and identify the relevant statutory locational element is well illustrated by the Georgia court's decision in *DeFrancis v. Manning*, 246 Ga. 307, 271 S.E.2d 209 (1980).  As quoted above, one of the alternative locational elements in the Georgia statute is a "vehicle . . . designed for use as the dwelling of another."  Ga. Code Ann. § 16-7-1(a) (2011).  The indictment in *DeFrancis* charged that the defendant "unlawfully without authority and with intent to commit a theft therein entered that certain vehicle, same being a gray Ford truck, being the property of and owned by McKesson Wine and Spirits Company, a division of Foremost-McKesson, Inc., said truck being located on 10th Avenue West in the City of Cordele, Crisp County, Georgia, at the time of said entry therein by the said accused."  246 Ga. at 307, 271 S.E.2d 209.  The Georgia Supreme Court set aside the defendant's burglary conviction because the indictment did not charge that the vehicle was "designed for use as a dwelling."  *Id*. at 308, 271 S.E.2d 209.  The Georgia Supreme Court held, "that the vehicle was designed as a dwelling was an essential element of the offense which must be alleged."  *Id*. (emphasis added).  The fact that under Georgia law the indictment must charge the type of place or location with such specificity further demonstrates that § 16-7-1's statutory listing of alternative locations for committing a burglary constitutes an enumeration of alternative elements.

For all of the above reasons, we conclude that the alternative locational elements in the Georgia statute are divisible.  *See United States v. Martinez-Garcia*, 625 F.3d 196, 198 (5th Cir. 2010) (concluding that the Georgia burglary statute in § 16-7-1(a) is divisible and that the defendant's Georgia conviction for burglary of a dwelling house was a crime of violence under U.S.S.G. § 2L1.2).

. . .

Our final task is to determine which of the alternative elements in Georgia's burglary statute formed the basis of Gundy's prior burglary convictions and whether those elements match the generic definition of burglary.  Having concluded that Georgia's burglary statute is divisible, we may use the modified categorical approach.  *Mathis*, 579 U.S. at ___, 136 S. Ct. at 2249.  Under that approach, we look to "a limited class of documents (for example, the indictment, jury instructions or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of."  *Id*.  These are known as *Shepard* documents.  *Id.*; *Shepard v. United States*, 544 U.S. 13, 26, 125 S. Ct. 1254, 1263, 161 L. Ed. 2d 205 (2005).

14

The indictment for each one of Gundy's prior Georgia burglary convictions charged the type of place and the address of each burgled location. Two indictments charged that Gundy unlawfully, and with the intent to commit theft therein, entered a "dwelling house" . . . .  Two other indictments charged that Gundy "unlawfully, without authority, and with intent to commit a theft therein" entered a "business house" . . . .  Thus, all of the burgled locations were either dwelling houses or buildings housing a business, which are generic burglaries.  Importantly, none were vehicles, railroad cars, watercrafts, or aircrafts, which are not generic burglaries.

*Gundy*, 842 F.3d 1156, 1166-69 (11th Cir. 2016)(footnotes omitted).

According to the Report, court documents related to Creekmore's 2001 conviction for burglary in Pickens County, Georgia, show that defendant was convicted based on his unlawful entry into a ***building*** with the intent to commit a crime, theft, therein.  (Crim. Doc. 16 at 6-7.)  The elements of Creekmore's Georgia burglary conviction conform to the elements of generic burglary.

Therefore, Creekmore's 2001 Georgia burglary conviction qualifies as a violent felony under the ACCA's enumerated crimes clause.

### 3. Arkansas Commercial Burglary – Ark. Code §§ 5-39-201; 5-39-101

Applying the methodology established in *Gundy*, the court finds that the Arkansas commercial burglary does ***not*** qualify as a violent felony under the ACCA enumerated-crimes clause because it is not divisible and is broader than generic burglary due to the inclusion of vehicles in its definition of "commercial occupiable structure."

At the time of his conviction, Arkansas law stated, "A person commits commercial burglary if he or she enters or remains unlawfully in a ***commercial occupiable structure*** of

another person with the purpose of committing in the ***commercial occupiable structure*** any offense punishable by imprisonment." Ark. Code § 5-39-201(b)(1)(emphasis added). In another section, the Arkansas Code defines "Commercial occupiable structure" as "a ***vehicle***, building, or other structure in which:  (A) Any person carries on a business or other calling; or (B) People assemble for a purpose of business, government, education, religion, entertainment, or public transportation." Ark. Code § 5-39-101(1)(emphasis added). A "'Vehicle' means any craft or device designed for the transportation of a person or property across land or water or through the air." *Id*. (5).

The Arkansas commercial burglary statute is similar in text and structure to Alabama's third-degree burglary statute, which the Eleventh Circuit has found was not divisible and was broader than generic burglary, as the definition of "building" included vehicles. The Eleventh Circuit held:

> Section 13A-7-7(a) of the Alabama Code provides that "[a] person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." The statute appears to match all three elements of generic burglary. *See* [*United States v.*] *Rainer,* 616 F.3d [1212,] 1214 [11th Cir. 2010)]. However, the statutory term "building" is defined as follows:
>
> > Any structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods, and such term includes any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein, and such term includes any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof.
>
> Ala. Code § 13A-7-1(2). A number of those things included in the definition of "building" (such as vehicles and watercraft) fall outside the "building or structure" element of generic burglary, making the burglary statute non-

16

generic. *See Rainer,* 616 F.3d at 1215. So we have to determine if the statute is divisible.

The key to determining divisibility, according to *Descamps,* is whether the "statute sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building *or* an automobile." 133 S. Ct. at 2281; *see also id.* at 2285 n.2 (indicating that a court may apply the modified categorical approach where the "state law is drafted in the alternative"). Nothing in the Alabama statute suggests its definition of "building" is drafted in the alternative.

Instead, Alabama Code § 13A-7-1(2) provides one definition of building and then includes a non-exhaustive list of things that fall under that definition. The statute defines "building" as "[a]ny structure which may be entered and utilized by persons for business, public use, lodging or the storage of goods." Ala .Code § 13A-7-1(2). The statute specifies that the term "structure" in the definition of building "*includes* any vehicle, aircraft or watercraft used for the lodging of persons or carrying on business therein," and that the "term *includes* any railroad box car or other rail equipment or trailer or tractor trailer or combination thereof." *Id.* (emphasis added). The items that follow each use of the word "includes" in the statute are non-exhaustive examples of items that qualify as a "structure" and thus count as a "building" under Alabama Code § 13A–7–1(2). *See Jean v. Nelson,* 863 F.2d 759, 777 (11th Cir.1988) ("[W]here the drafters used the word 'includes' they intended to provide a *non-exhaustive* list of examples to clarify the meaning of the term.") (quotation marks omitted). The statutory definition of "building" does not say what is not included.

In light of the *Descamps* decision, illustrative examples are not alternative elements. *See United States v. Cabrera-Umanzor,* 728 F.3d 347, 353 (4th Cir. 2013)(holding that a statute was indivisible under *Descamps* where the acts of sexual abuse listed in the statute "[we]re not elements of the offense, but serve[d] only as a non-exhaustive list of various means by which the elements of sexual molestation or sexual exploitation can be committed"). As a result, the statute is non-generic and indivisible, which means that a conviction under Alabama Code § 13A-7-7 cannot qualify as generic burglary under the ACCA. *See Descamps,* 133 S. Ct. at 2292 (explaining that a defendant "is never convicted of the generic crime" where an "overbroad" indivisible statute is involved).

*Howard*, 742 F.3d 1348-49 (emphasis in original)

17

For the same reasons that a conviction under Alabama's third-degree burglary statute is not a violent felony conviction, the court finds that a conviction for commercial burglary under the Arkansas statute is not a conviction for generic burglary and, thus, is not a violent felony conviction for purposes of the ACCA.

### 4.  FLORIDA BURGLARY – Fla. Stat. §§ 810.02, 810.011(2)

The Report states that on June 30, 2003, Creekmore was arrested for burglary of a dwelling under Fla. Stat. § 810.02(3)(b).  At that time, § 810.02(1)(b) and (3)(b), stated:

> (b)  For offenses committed after July 1, 2001, "burglary" means:
>
>> 1.  Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
>>
>> 2.   Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>>
>>> a.  Surreptitiously, with the intent to commit an offense therein;
>>>
>>> b.  After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>>>
>>> c.  To commit or attempt to commit a forcible felony, as defined in s. 776.08.
>
> . . .
>
> (3)  Burglary is a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a:
>
> . . .

18

>(b)  Dwelling, and there is not another person in the dwelling at the time the offender enters or remains . . . .

Fla. Stat. § 810.02 (1)(b), (3)(b) (June 30, 2003).  At the same time, Florida law defined "dwelling" as "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, ***together with the curtilage*** thereof."  Fla. Stat. § 810.011(2)(2003)(emphasis added).

The Eleventh Circuit has held, "The Florida offense includes burglary of 'the curtilage' of the dwelling.  Fla. Stat. § 810.011(2).  The inclusion of curtilage takes Florida's underlying offense of burglary outside the federal definition of 'generic burglary', which requires an unlawful entry into, or remaining in, a building or other structure." *United States v. Matchett*, 802 F.3d 1185, 1196 (11th Cir. 2015)(internal quotations and citations omitted).  In *United States v. Esprit*, the Eleventh Circuit held that a conviction under Florida's burglary statute was not a conviction for a violent felony under the enumerated-crimes clause of the ACCA:

>Because Florida law defines . . . a dwelling . . . as "a building . . . together with the curtilage thereof," we have explained that "Florida does not consider burglary of the curtilage of a structure to be a crime distinct from burglary of that structure." *United States v. Matthews*, 466 F.3d 1271, 1274 (11th Cir. 2006).  The Florida Supreme Court has made this same point:

>>There is no crime denominated burglary of a curtilage; the curtilage is not a separate location wherein a burglary can occur.  Rather, it is an integral part of the structure or dwelling that it surrounds.  Entry into the curtilage is, for the purposes of the burglary statute, entry into the structure or dwelling.

*Baker v. State*, 636 So. 2d 1342, 1344 (Fla. 1994).

> *Baker* confirms that Florida jurors never were required to decide if Mr. Esprit committed burglary by entering a building rather than just its curtilage. Or, as the Florida Supreme Court put it, "for the purposes of the burglary statute, it would not matter whether [Mr. Esprit] was in [a victim]'s secluded back yard or back bedroom; in either circumstance, the courts must consider him to have been within [a] dwelling." *Id.* For that reason,

>> [t]he modified approach thus has no role to play in this case. The dispute here does not concern any list of alternative elements. Rather, it involves a simple discrepancy between generic burglary and the crime established in [Fla. Stat. § 810.02(1)(b)(1) ]. The former requires an unlawful entry [into a building or structure]. The latter does not.

> *Descamps*, 133 S. Ct. at 2285 (internal citation omitted). Florida's burglary statute creates a single indivisible crime that includes non-generic burglary. That means "no conviction under the statute can be assumed to be generic." *Lockett*, 810 F.3d at 1266. And if no conviction under Florida's burglary statute qualifies as generic burglary, then no such conviction can serve as an ACCA predicate offense. Thus, as a categorical matter, a Florida burglary conviction is not a "violent felony" under ACCA.

*United States v. Esprit*,  841 F.3d 1235, 1240-41 (11th Cir. 2016).

Because a Florida burglary conviction is not a "violent felony" conviction under the enumerated-crimes clause, Creekmore's conviction for burglary under Florida law cannot be used to enhance his sentence under the ACCA.

## B. ELEMENTS CLAUSE – ATTEMPTED HOME-INVASION ROBBERY – Fla. Stat. §§ 777.04, 812.13, 812.135

In June 2003, Creekmore was arrested and charged with attempted home-invasion robbery; he was subsequently convicted. At the time, Florida defined "home-invasion robbery" as, "any robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit a robbery of the occupants therein." Fla. Stat. §

812.135(1).  It defined "robbery" as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear."  Fla. Stat. § 812.13(1).  "Putting in fear" under the Florida robbery statute means fear of death or great bodily injury.  *United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011).  As for attempt crimes, in June 2003, Florida law stated, "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . ."  Fla. Stat. § 777.04 (2003).

Discussing the career-offender status under the Sentencing Guidelines, the Eleventh Circuit has held:

> The bare elements of § 812.13(1) also satisfy the elements and residual clauses of U.S.S.G. § 4B1.2(a).  . . .  As stated above, robbery under that statute requires either the use of force, violence, a threat of imminent force or violence coupled with apparent ability, or some act that puts the victim in fear of death or great bodily harm.  All but the latter option specifically require the use or threatened use of physical force against the person of another.  And, once again, we find it inconceivable that any act which causes the victim to fear death or great bodily harm would not involve the use or threatened use of physical force.  Section 812.13(1) accordingly has, as an element, the "use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  Moreover, because the commentary explicitly states that the attempt to commit a "crime of violence" is itself a "crime of violence," Lockley's attempted robbery conviction categorically qualifies under the elements clause as a predicate for the career offender enhancement.  See U.S.S.G. § 4B1.2, comment. (n.1).

21

*Lockley*, 632 F.3d at 1245.  Like U.S.S.G. § 4B1.2(a)(1), under the elements clause of the ACCA, a "violent felony" is defined as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."   18 U.S.C. § 924(e)(2)(B)(i).  However, the ACCA has no provision or commentary, like the Sentencing Guidelines, that "explicitly states that the attempt to commit a 'crime of violence' is itself a 'crime of violence.'"  *Lockley*, 632 F.3d at 1245 (citing U.S.S.G. § 4B1.2, comment. (n.1)).

The court looks to Florida law to determine whether the crime of attempted home-invasion robbery has "as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  "To prove attempted robbery, [Florida] was required to present evidence establishing beyond a reasonable doubt that [a defendant] intended to commit a robbery and committed an overt act toward completion of that offense."[8]  *Brooks v. State*, 762 So. 2d 879, 897 (Fla. 2000)(citing Fla.

---

[8]Florida's Jury Instructions state the elements of attempted home-invasion robbery as follows:

To prove the crime of Home-Invasion Robbery, the State must prove the following three elements beyond a reasonable doubt:

1. (Defendant) entered the dwelling of (victim).

2. At the time (defendant) entered the dwelling, [he] [she] intended to commit robbery.

3. While inside the dwelling, (defendant) did commit robbery.

A robbery consists of the following:

1. (Defendant) took money or property from the person or custody of

Stat. § 777.04(1)).  However, the distinction between attempted robbery and robbery "is not

_____

> another.
>
> 2.  Force, violence, assault, or putting in fear was used in the course of the taking.
>
> 3.  The property taken was of some value.
>
> 4.  The taking was with the intent to permanently or temporarily [deprive another of [his] [her] right to the property or any benefit from it] [appropriate the property of another to [his] [her] own use or to the use of any person not entitled to it].

*Robbery*, JURY INST. (CRIM.) FLA. 15-3.  The force required to prove robbery is set forth in the  Florida Jury Instructions as –

> The taking must be by the use of force or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim does not resist.  The law does not require that the victim of robbery resist to any particular extent or that the victim offer any actual physical resistance if the circumstances are such that the victim is placed in fear of death or great bodily harm if he or she does resist.  But unless prevented by fear, there must be some resistance to make the taking one done by force or violence.

*Id*.  If an attempt is charged, Florida requires the jury to find:

> 1. (Defendant) did some act toward committing the crime of (crime attempted) that went beyond just thinking or talking about it.
>
> 2.  [He] [She] would have committed the crime except that
>
>> a.  [someone prevented [him] [her] from committing the crime of (crime charged).]
>>
>> b.  [[he] [she] failed.]

*Inchoate Crimes*, JURY INST. (CRIM.) FLA. 5-1.

23

a difference in the elements of [robbery] but only a difference in whether the crime was prevented or otherwise failed to reach completion." *Knight v. State*, No. 1D14-2382, 2016 WL 4036091, at *1 (Fla. Dist. Ct. App. July 28, 2016). "Mere preparation is not enough" to support a conviction for an attempt crime under Florida law. *James v. United States*, 550 U.S. 192, 202 (2007), *overruled on other grounds by Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). A conviction for attempted home-invasion robbery requires proof of attempted use of physical force or threatened use of physical force of the kind sufficient to support a conviction for home-invasion robbery. Therefore, a conviction for attempted home-invasion robbery under Florida law is a "violent felony" conviction under the elements clause of the ACCA.

For the reasons set forth above, the court finds that Creekmore's Motion to Vacate is due to be granted in part and denied in part. His Georgia burglary conviction and his Florida conviction for attempted home-invasion robbery are properly considered "violent felonies" under the ACCA; however, his convictions for burglary in Florida and Arkansas are not. As Creekmore has only two convictions for violent felonies, as defined by the ACCA,  his sentence will be vacated. Therefore, by separate order, the court will set Creekmore for resentencing in light of its Memorandum Opinion and Order granting in part and denying in part Creekmore's Motion to Vacate.

## CONCLUSION

Based on the foregoing, the Motion to Vacate, as amended, is due to be granted in part and denied in part. An Order vacating Creekmore's sentence in his criminal case, Case No. 1:12-CR-0291-SLB-TMP, will be entered contemporaneously with this Memorandum Opinion.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing § 2255 Proceedings, provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). And, the "certificate of appealability may issue . . . *only* if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)(emphasis added). To make a substantial showing of the denial of a constitutional right, the applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)(citations and internal quotations omitted).

The court finds that well-established, binding Eleventh Circuit caselaw supports the court's decision regarding Creekmore's burglary convictions and that Creekmore has not raised any issue with regard to these convictions that is reasonably debatable and/or deserves encouragement to proceed further.  However, the issue of whether his prior conviction for attempted home-invasion robbery is a violent felony conviction under the ACCA may be debatable by reasonable jurists.  Therefore, issuance of a certificate of appealability is warranted in this case but only as to the issue of whether attempted home-invasion robbery under Florida law is a violent felony under the elements clause of the ACCA.

**DONE** this 27th day of January, 2017.

*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE